CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY

*v.*

CATHARINE CLARK, Admx.

*Filed at Ottawa November 20, 1883.*

1. EVIDENCE—*habits of person to show he exercised due care.* Where a brakeman was killed while attempting to couple cars, no one being present or knowing how the accident occurred, in a suit by his personal representative to recover damages of the railway company, evidence of his prior habits as to care, prudence and sobriety is admissible, as tending to prove that the deceased was prudent, cautious and sober at the time of the injury. But if there were witnesses who saw the transaction, and can describe how the accident took place, such evidence would not be admissible.

2. SAME—*habits of other persons on question of care.* In an action by an administratrix to recover for causing the death of her intestate by negligence while engaged in coupling cars, evidence of the usual mode of coupling and uncoupling cars at the same place by others is inadmissible. What others did, or were in the habit of doing, does not tend to prove the issue as to due care by the deceased.

8—108 ILL.

3. SAME—*practice—when admissible for one purpose but not for others.* If evidence is admissible for any purpose it must be received, and the party against whom it is admitted, if it tends to mislead on some other question, is entitled to have it limited by instruction to the purpose for which it is admissible.

4. MASTER AND SERVANT—*railroad not bound to inform servant of danger in the service.* The law does not impose on a master the duty of informing his servants of all dangers in and about the premises where they are required by his authority to perform labor. A railway employé is presumed to understand the nature and dangers of his employment when he engages in the service, and to assume all the ordinary hazards of the service.

5. SAME—*master must know of danger before he is required to inform servant.* In an action by a servant to recover damages from his master on the ground of negligence, the servant is not entitled to recover because the service required at a particular place was dangerous, and the master failed to inform the servant of that fact, in consequence of which he was injured, when it does not appear from the evidence that such place was, in fact, more dangerous than other places, or that the master knew that it was dangerous.

6. NEGLIGENCE—*not learning that service at a place is dangerous.* An instruction on a question of comparative negligence asserted, that if the defendant's railroad track and platform are dangerous, and the defendant, by reasonable care, could have learned the fact, and the person injured could not, by reasonable care, have learned they were dangerous, and that the injury was caused thereby, the defendant was liable: *Held*, that the same was flatly contradictory, and calculated to confuse and mislead. If reasonable care would have disclosed the fact of danger to one party, it would have done so equally to the other.

7. SAME—*comparative—instruction not stating rule accurately.* Where an instruction speaks of negligence and also gross negligence of the defendant, and then refers to slight negligence of the person injured as compared with the defendant's negligence, it is too loose and inaccurate in not stating definitely which degree of negligence of the defendant the jury should compare with the injured party's negligence.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. N. M. LAWS, Judge, presiding.

Mr. J. C. HUTCHINS, Mr. THOMAS F. WITHROW, and Mr. H. W. WELLS, for the appellant:

The court erred in allowing the witnesses to testify as to the habits of the deceased as to care, caution and sobriety.

Plaintiff should only have been permitted to prove such facts as would justify a reasonable inference that at the time deceased exercised ordinary care. *Chicago, Burlington and Quincy R. R. Co.* v. *Lee,* 60 Ill. 501; *Tenny* v. *Tuttle,* 1 Allen, 185; *Davis* v. *Oregon and C. R. R. Co.* id. 187.

The court also erred in permitting the plaintiff to prove that there was a general custom among railroad men to couple and uncouple cars on the inside of curves. *Berg* v. *Chicago, Milwaukee and St. Paul R. R. Co.* 50 Wis. 419; *Kroyes* v. *Chicago, Rock Island and Pacific R. R. Co.* 32 Iowa, 363; *Ferguson* v. *Central Ry. Co.* 12 N. W. Rep. 293; *Ormund* v. *Central Iowa Ry. Co.* 13 id. 54; *Hamilton* v. *Des Moines Valley R. R. Co.* 36 Iowa, 38.

The admission of this evidence was error, because it justified a man in performing an unsafe and dangerous duty where there was room enough to perform it elsewhere with safety. *Chicago and Northwestern R. R. Co.* v. *Donahue,* 75 Ill. 106; *Foster* v. *Chicago and Alton R. R. Co.* 84 id. 164; *Pennsylvania Coal Co.* v. *Conlan,* 101 id. 93.

The plaintiff's first instruction declares that the master is bound to advise his employés or servants of any and all danger in and about the premises where they are required to work, and that he is liable if he does not do so. This is not the law. The rule is, that an employé assumes, and is presumed to know, the ordinary hazards of his employment. *Indianapolis, Bloomington and Western R. R. Co.* v. *Flanigan,* 77 Ill. 370; *Schadewald* v. *Milwaukee, L. S. and W. Ry. Co.* 13 N. W. Rep. 460; *Honner* v. *Illinois Central R. R. Co.* 15 Ill. 550; *Illinois Central R. R. Co.* v. *Cox,* 21 id. 20; *Toledo, Wabash and Western Ry. Co.* v. *Durkin,* 76 id. 395; *Lake Shore and Michigan Southern R. R. Co.* v. *McCormick,* 74 Ind. 440; *Toledo, Wabash and Western Ry. Co.* v. *Black,* 88 Ill. 112; *Richardson* v. *Cooper,* id. 323; *Baylor* v. *Del., Lack. and W. R. R. Co.* 11 Vroom, 23.

Mr. George A. Wilson, for the appellee:

The failure of appellant to either increase the distance between the cars and platform, so that its employés can discharge their duties with reasonable safety, or to lessen the intervening space, so that its employés can stand upon the platform and discharge their duties, unquestionably convicts appellant of gross negligence. Besides, the curve there was so great that the employés were compelled to couple and uncouple cars on the inside of the curve. As to negligence in this respect, see *Illinois Central R. R. Co.* v. *Walsh,* 51 Ill. 183; *Chicago and Alton R. R. Co.* v. *Wilson,* 63 id. 167; *Chicago, Burlington and Quincy R. R. Co.* v. *Gregory,* 58 id. 272; *Chicago and Iowa R. R. Co.* v. *Russell,* 91 id. 298; *Chicago and Alton R. R. Co.* v. *Pondrom,* 51 id. 333.

All the proof showed that the deceased was a temperate, steady, careful and prudent man. He discharged his duties well, and no complaint was ever made to the contrary.

Mr. Justice Walker delivered the opinion of the Court:

Appellee brought this action in the circuit court of Peoria county, against appellant, to recover for the death of her husband, J. H. Clark, averred to have been caused by negligence of the railroad company. It appears that deceased was a brakeman in the employment of appellant; that at Davidson's quarry, near the city of Joliet, he was injured in attempting to couple cars at a side-track and platform for loading cars with stone; that in coupling them he got between the platform and cars, and his lantern, from some cause, got between him and the cars, and it was so pressed against him that he received internal injuries, from which he died. The negligence averred is, that the track was constructed too near or close to the platform; that the distance between the cars, when on the track, and the platform, did not exceed ten inches; that on the second day of July, 1879, in the night,

Clark, in the line of his duty, exercising due care, was engaged in coupling a car loaded with stone, and the defendant's servants in charge of the train handled it so negligently, together with the improper location and construction of the platform, that the train struck Clark with great force, and he was thereby killed.    It is averred that deceased did not know of the dangerous character of the place, and was ignorant of the distance or space between the platform and cars, but the defendant knew it was dangerous, but failed to notify deceased of the fact.    On a trial in the circuit court, plaintiff recovered a judgment.    Defendant appealed to the Appellate Court for the Second District, where the judgment was affirmed, and defendant appeals to this court.

It is first insisted that the circuit court erred in admitting evidence of the habits of deceased as to care, prudence and sobriety.    Appellee, in her declaration, averred, as she was required to do, that deceased was in the exercise of due care at the time he sustained the injury of which he died, and as no person was present, or knew how the accident occurred, we think this evidence tended to prove that averment.    If he was habitually prudent, cautious and temperate, it tended to prove he was so at the time of the injury, which, with the instinct of self-preservation, would be evidence for the consideration of the jury in determining whether he was in the exercise of care.    Had there been witnesses who saw the infliction of the injury, the jury could then have determined from such evidence whether he was careful or negligent, and in such a case this evidence would not be admissible.    When there are no witnesses to describe such an occurrence, the defendant would surely have the right to prove the person was habitually rash, imprudent and intemperate, to repel the presumption that he was in the exercise of proper care at the time he received the injury.    If evidence is admissible for any purpose, it must be received, and the party against whom it is admitted, if it tends to mislead on some other

question, is entitled to have it limited, by instruction, ·to the purpose for which it is admissible.

It is next urged that the trial court erred in admitting evidence as to the usual mode of coupling and uncoupling cars at that switch.   One of the issues being tried was, whether deceased performed his duty with such negligence as to preclude a recovery.   He was bound to use care, or no recovery can be had, and what others did or were in the habit of doing did not tend to prove that issue.   Such a course may have been careless, or even reckless, and if so, it did not justify him in omitting the observance of care.   We therefore think that such evidence did not tend to prove care on the part of deceased, and the court erred in its admission.

It is claimed the first instruction is erroneous.   It, among other things, informs the jury that it is the duty of the master to inform his servants of all danger in and about the premises where they are required, by his authority, to perform labor.   This was manifestly wrong.   Railroad employés, as all the books lay down the doctrine, assume the ordinary risks and hazards of the employment.   The presumption is that the employé understands the nature and dangers of the employment when he engages in the service, and if not, that he will inform himself.   It would be wholly impracticable for railroads and manufacturers to employ men of experience to inform each of the hands that any particular act he is required to perform is dangerous.   It would be ruinous to such bodies to hire a person to accompany every brakeman and other employés, to inform them of danger in the performance of every act of duty, or of the danger in the manner of its performance.   It is impossible that the law can ever impose such requirements, — and that is what this instruction in substance asserts as a legal requirement.

The instruction further informs the jury, that if the employer knows of such danger, and the employés do not, and are unable to learn the danger by reasonable care and dili-

gence, and the employer fails to advise the employés of the danger, he is in such case liable for any injury they sustain; and if the jury believe, in this case, that the stone platform was dangerous, and the defendant failed to advise deceased thereof, and the deceased did not know of such danger, and could not have learned it by the use of reasonable care, and he was thereby injured, from which he died, then the jury should find the defendant guilty. This branch of the instruction is erroneous, and misstates the law. Moreover, there is no evidence tending to prove the company had any notice that the platform was dangerous. On the contrary, it had been used for fourteen years in the same condition it was then in, and many thousand cars had been coupled and uncoupled at that place, and on the same side of the track where deceased was injured, and this was the first accident of the kind that had ever occurred on that switch. But the instruction announces that appellant was liable whether the company knew or not that it was dangerous. It informs the jury that if it was dangerous they should find appellant guilty. This instruction was highly calculated to mislead the jury, and should not have been given.

The fourth of appellee's instructions is flatly contradictory, and calculated to confuse and mislead. It asserts that if the track and platform were dangerous, and the company, by reasonable care, could have learned the fact, and deceased was without knowledge, and could not, by reasonable care, have learned it was dangerous, and deceased received his injury thereby, they should find the defendant guilty. If deceased could not learn that the place was dangerous by reasonable care, how can appellant be held liable because it did not learn the fact? Reasonable care only could, when exercised by the company, reach the same results that would be attained by the use of the same care used by deceased. If his care and diligence could not learn that it was dangerous, it is unreasonable to hold appellant liable, when,

by the use of the same care, it could not learn. there was danger.

The seventh of appellee's instructions is loosely drawn, and is not accurate in its statement of the law. It first asserts that if appellant was guilty of negligence, as averred in the declaration, and if deceased was guilty of negligence, (if they found from the evidence that appellant was guilty of gross negligence,) then it can not relieve itself from liability by showing that deceased was also guilty of negligence, if his negligence was slight as compared with that of appellant. The instruction speaks of negligence, and also of gross negligence, of appellant, and then refers to slight negligence of deceased as compared with appellant's negligence. Which degree of negligence of appellant are the jury to compare with negligence of deceased? But above and beyond this, there was no evidence tending to show gross negligence of appellant. There was therefore no evidence upon which to base the instruction. It was therefore error to give it.

For the errors indicated the judgment of the Appellate Court is reversed, and the cause remanded.

*Judgment reversed.*