JOHN McNULTA, RECEIVER, ETC.,

v.

JOHN R. LOCKRIDGE, ADMINISTRATOR, ETC.

*Railroads—Personal Injuries—Pleading—Action against Defendant in Representative Capacity—Plea of General Issue—Responsibility of Receiver for Negligent Acts Done under his Predecessor—Careful Habit of Deceased—Evidence of, When Admissible—Judicial Notice—Instructions.*

1. In an action against a receiver in his representative character, allegations in the declaration of the orders of court appointing the defendant and his predecessor, are admitted by a plea of the general issue and need not be proved.

2. Petitions on file for the removal of the case to the Federal Court, in which the defendant alleges his appointment as receiver by such court, can be judicially noticed by the court and avoid the necessity of proof of defendant's appointment as receiver.

McNulta v. Lockridge.

3.   Where an injury is received through the negligence of the servants of a railroad corporation in the hands of a receiver, the action for such injury is properly brought against the receiver of the company at the time the action is brought, though he was not the receiver at the time the accident occurred.

4.   Where there is no living witness of an accident causing the death of the person in question, evidence as to his habits, whether careful or otherwise, is admissible in an action against the party through whose alleged negligence the accident occurred.

5.   Refinements in verbal criticism upon instructions are not to be encouraged and will not lead to the reversal of a case where it appears that the jury were not misled.

6.   It is not error for the court to decline to give instructions which are but repetitions in substance of those already given.

[Opinion filed November 23, 1889.]

IN ERROR to the Circuit Court of Christian County; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Messrs. JOHN G. DRENNAN and GEORGE B. BURNETT, for plaintiff in error.

Messrs. RICKS & CREIGHTON and PATTON & HAMILTON, for defendant in error.

Counsel seem to regard the judgment in the case as being against McNulta personally.   The judgment is against Mc-Nulta as receiver, to be paid in due course of the administration of the trust.

No execution is ordered against him personally or officially. The argument of counsel proceeds upon the theory that in this suit an effort is made to make one man liable for the torts of another, which every one will concede can not be done· Had this suit been brought against McNulta, simply, it requires no argument to show that no recovery could be had against him for the negligence of Cooley.   It is well settled that an action of this character can not be maintained against a receiver personally for the negligence of his servants while transacting business as a receiver.   Beach on Receivers, Secs. 715–18;  Woodruff v. Jewett, 37 Hun, 205;  Commonwealth v. Runk, 26 Pa. St. 235;  Davis v. Duncan, 19 Fed. Rep. 477;

Wait on Insolvent Corporations, Sec. 242; 2 Rohrer on Railroads, 898.

It is also claimed by counsel for plaintiff in error, that in the present instance defendant in error has his action against Cooley, notwithstanding he is no longer receiver, but in this they are not supported by authority. Beach on Receivers, Sec. 720.

If this suit can not be prosecuted, defendant in error is remediless, because no action can be maintained against Cooley, since he is no longer receiver. A receiver is an officer of the court, and the property in his hands is in *custodia legis*, and can not be reached by execution.

The direct question has not been passed upon by any court of last resort, that we are aware of, and we presume counsel for plaintiff in error have found no published opinion on the subject, or they would refer to it.

We take the liberty, however, of stating that Judge Gresham, in passing upon the motion to remand these cases, very emphatically repudiated this same proposition, then vigorously urged by Mr. Beale, one of the attorneys for the receiver.

It has been decided also, that if a receiver who has commenced a suit in his name, be removed, his successor may be substituted as plaintiff in his stead, and that the death of the first receiver after the substitution of his successor, will have no effect upon the action by way of abatement. Sheldon v. Adams, 27 How. Pr. 179; same case, 41 Barb. 54; Searcy v. Stubbs, 12 Ga. 437; Beach on Receivers, Sec. 692.

Suits pending against a corporation are not abated by the appointment of a receiver. Mercantile Ins. Co. v. Jaynes, 87 Ill. 199; T. W. & W. Ry. Co. v. Beggs, 85 Ill. 80; Wait on Insolvent Corporations, Sec. 248.

PLEASANTS, P. J. On the 15th of January, 1887, James Molohon and his wife, in attempting to cross the Wabash railroad at a public crossing, in a sleigh, were struck and killed by a locomotive engine of the Wabash Railroad Company. In July following, the defendant in error, their administrator, brought two suits against the receiver of said railroad com-

pany for the alleged injury. The process and declaration being alike, except as to the name of the decedent, the two cases were consolidated by agreement, and tried as one. It was alleged that at the time of the injury complained of the railroad was being operated by Thomas M. Cooley, as receiver, appointed by an order of the United States Circuit Court, and that on the first day of April, 1887, the plaintiff in error was, by like order, appointed his successor; and the specifications of negligence alleged in the counts respectively, were (1) that the statutory signals were not given on approaching the crossing; (2) that trees, shrubbery, etc., were permitted to remain on the right of way upon and about the crossing, which obstructed the view of persons traveling on the highway, and prevented the deceased from seeing the engine in time to avoid it, and (3) that the engine was driven at a high and reckless rate of speed, to wit, of forty miles an hour. All of these acts and omissions were charged against said Cooley, as such receiver, or his servants.

A general demurrer interposed to the declaration and to each of the four counts thereof was sustained as to the first but overruled as to the others, which contained, respectively, the charges above stated. Thereupon the general issue was filed, on which alone the trial was had. Upon the close of plaintiff's evidence in chief, the defendant asked the court to instruct the jury that upon that evidence he was not entitled to recover, which was refused; and thereupon the trial proceeded, and resulted in a general verdict and special findings for the plaintiff for $6,000. A new trial was denied, and judgment entered upon the general verdict. The errors complained of are all in giving and refusing certain instructions, and overruling the motion for a new trial.

First, the instruction refused as just above stated, which was asked on two grounds : that the orders appointing Cooley and McNulta were material and alleged, and yet no proof of them was offered; and that there was no pretense of proof of any negligence on the part of McNulta, as receiver or otherwise, or of his servants.

These orders, we apprehend, were material and alleged

only as characterizing the defendant, who was sued as the receiver, succeeding Cooley, of the Wabash Railway Company—an official and representative character. In that character he was charged, that is, alleged to be chargeable, for certain specified "grievances," among which was not the fact that he was the receiver, succeeding Cooley, of said company, for that fact would not be, in contemplation of the law, a grievance. In answer to that charge the defendant says "the said defendant"—who is not John McNulta, but "John McNulta, Receiver," etc.—"comes and defends the wrong and injury, when, etc., and says he is not guilty of the said supposed grievances" etc., and "of this" alone he "puts himself upon the country." He might have said, and we may well suppose he would have said, if it had been true, that he was not the receiver, etc.; but he did not. He impliedly admitted that he was such receiver, by designating himself as the defendant who was sued, and not denying the allegation of his receivership. Such we understand to be the sense and, as a rule, the effect of the general issue pleaded by one who is sued, not as an individual, but in a special character. Stephen on Pl. 158. Where the injury alleged is to the relative rights of the plaintiff, it puts in issue also the relation out of which they are claimed to arise, since that involves the exercise of the right. Conant v. Griffin, 48 Ill. 414; 1 Chitty on Pl. 472. But it does not put in issue the character in which the defendant is sued. 1 Ch. Pl., Marg. p. 478 (9th Am. Ed.). Hence, in this case, there was no need of evidence to prove this allegation, however material. The same reasoning applies to the alleged appointment of Cooley.

Besides, the record shows an order of the court removing these causes to the United States Circuit Court, upon petition of the defendant setting forth that he was sued as receiver, etc., and sought to be charged as such for the tort or wrong of Cooley as his alleged predecessor in such receivership or of his servants, "without first having obtained the leave of the said Circuit Court of the United States," and that the right of plaintiff to bring or maintain the action involved and required the construction of the act of Congress, approved

McNulta v. Lockridge.

March 3, 1887, which próvides by Sec. 3, that "every receiver * * * of any property, appointed by any court of the United States, may be sued in respect of any act or transaction of his, in carrying on the business connected with such property, without the previous leave of the court in which such receiver was appointed." We understand from the petition itself and from the argument here, that the particular part of the act supposed to require construction was the phrase, "for any act or transaction of his," presenting the question whether such receiver may be sued without such leave for the act or transaction of his predecessor. We also understand that the averment in the petition, that this question was involved, and a construction of that phrase in the act of Congress was required, meant that it was necessarily involved and required. But this was not true unless the defendant was in fact such receiver and Cooley was his predecessor; for the question could have been eliminated and the necessity of such construction avoided by a plea denying that he was receiver. The petition, then, was an admission of his receivership, of which the court below, to which it was made, could take judicial notice.

The other ground of the instruction was that the injury, if any, was proved, as it was also charged, to have been done under the administration of Cooley and not of the defendant. It is contended that for such an injury the defendant can not be held liable because neither he nor his servants committed it, and that the action for it can be maintained only against Cooley or his servants, who did commit it. This would clearly be true of an action brought to enforce a personal liability for such an injury, and the proposition is here contended for upon principles applicable to such an action. As here presented the question is conceded to be a novel one. Counsel confess that they have been unable by the most diligent search to find an authority directly upon the point, excepting an assertion in Kerr v. Little, 39 N. J. (Eq. R.) 83, and this, with the provision of the act of Congress above quoted, is all that is cited in the brief.

That case was a suit in equity against the receiver of the Cen-

tral Railroad Company, of New Jersey, for damages for the breach of a contract made with the complainant by the late receiver, by which complainant was to remove from the engines the coal, cinders and ashes, and was to have the same for his labor. The defendant filed a general demurrer, and the question considered seems to have been that of equity jurisdiction. All that was said in the opinion bearing upon the point now before us was the following: " * * * the complainant alleges (and truly) that he is without remedy at law. He can not maintain an action against the present receiver on the contract, for he did not make it." No authority for the assertion was cited, and the reason given would apply to a suit against an administrator on a note of his intestate—a good reason where the liability sought to be established is personal, but ignoring entirely the effect of the special character in which the defendant is sued, and which is the decisive question involved. The jurisdiction was sustained upon the ground that complainant " had a claim upon the trust fund still under the control of that court."

So here, it is said that " no action can be maintained against one man for the tort of another where the relation of master and servant does not exist ; " that " it is sought to make the defendant liable upon the sole ground that he succeeded to the operation of the property, in the operation of which, by another, the injury arose;" that " an administrator may operate machinery belonging to his intestate, and for the torts of his servants may be sued in an action at law," and "like a receiver, * * * before or after he has resigned his trust, but no action can be maintained against his successor for his acts ; " that " in the present case the plaintiff has his action against Cooley," and that " if * * * Cooley has resigned, this does not in any way affect plaintiff's right to sue him ; nor does the fact that defendant has succeeded him make the defendant liable" for his tort ; and that " it is not pretended that the defendant sustained any relation to the servants through whose alleged negligence the injury was occasioned." The foregoing is all that is submitted by way of argument upon the point for the plaintiff in error, which counsel conclude by

McNulta v. Lockridge.

the statement that "upon what principle he can be made lia-
ble for their tortious acts is beyond our comprehension."   We
regret that counsel did not consider and discuss for our help
the only principle upon which, as it occurs to us, such a liabil-
ity is or could be claimed.   The legal propositions asserted
are true and elementary as to a personal liability.   But none
such is here contended for.   The ground of plaintiff's claim
is not stated as we understand it.   It is not "solely" or at all
that the defendant "succeeded to the operation of the prop-
erty."   A purchaser at judicial sale might have succeeded to
that.   Nor is it that he sustained any relation to the servants
of Cooley, through whose alleged negligence the injury was
occasioned.   But it is the relation of Cooley to the railroad com-
pany and the continuation and identity of that relation in the
defendant as his successor.   In other words, the theory of plaint-
iff's case is that neither Cooley nor the defendant is personally
liable ; that the party really liable, whose means must pay the
damages claimed, if they are ever paid, is the railroad com-
pany; that by reason of its condition and the relations that
Cooley sustained to it, that liability could be enforced only
through Cooley while he sustained those relations; that he has
ceased to sustain them, and that the defendant now sustains
them in his stead ; and therefore that liability can now be
enforced only through this defendant.

Since the question is new and its solution perhaps not clear
a fuller discussion of it would doubtless have been of service
to us.   Without it we are inclined to the opinion that the
present receiver was rightly made defendant.   Plaintiff's right
and remedy were strictly legal and the damages claimed
unliquidated, making a case for trial by jury.   The injury was
alleged to have been committed by servants acting as such in
the line and within the scope of their employment.   Some-
body, therefore, should be responsible as master.   While in
one sense they were servants of the receiver, being employed
by him and subject to his direction, we apprehend that for all
purposes affecting the question of responsibility, where the
receiver was not personally in fault, the corporation was the
master; indeed, that for such purposes the receiver was the

corporation; for in such case he clearly is not personally liable. Beach on Receivers, Secs. 715, 718; Davis v. Duncan, 19 Fed. Rep. 477; Commonwealth v. Runk, 26 Pa. St. 235; Woodruff v. Jewett, 37 Hun, 205. The court that appointed him is not, and so, if the corporation is not, then there is no responsible master, though the injury was caused by the negligence of servants, for which the master would be liable.

It is not claimed that the action should have been brought against the corporation by its proper name. By its own voluntary action it had forfeited for a time its authority and power to exercise its functions and franchises, including those of suing and being sued; and these had been lawfully transferred to and vested in Cooley, as receiver. The United States Circuit Court had suspended its power to collect claims, pay debts or suffer judgments, in view of its financial condition and the interest of its creditors. It is said, however, that the action should have been brought against Cooley—not against him personally, for it is not pretended that he was so liable, but as receiver. The action could be brought only by an administrator, to be appointed after the injury had been done. That would require some time. Just when the plaintiff was so appointed we do not now remember, but when the action was brought Cooley, as receiver, was *functus*—no longer in existence. We understand that he was therefore absolutely incapable of acting or being acted upon in that character. The court which appointed him had also divested him of all property, and discharged him of all rights, powers and duties as receiver; so that in that character he was no longer subject to any order even of that court. How, then, could he be served with process, or plead, or suffer judgment, or pay an execution? If process were returned as duly served upon him and he failed to appear or to plead, would the court allow a writ of inquiry to be executed, shutting out all defense, and judgment to go for the damages so assessed, to be paid out of moneys or property of the company, of which he had no charge or control, and for which he was in no wise responsible? Such a judgment would not be unjust to the company and its creditors, only because it would be utterly worthless, either as a

warrant for any proceedings by way of execution, or as evidence of a claim.    An action against him as "late receiver" would be an action against him personally which, as has been seen, would not lie.

Then who else but the present receiver, who was such when the action was brought, could be properly made defendant?    And who else should?    Who has a deeper interest or higher duty, or is better able to protect and defend the company against unjust claims, whether they originated before or during or since the administration of his predecessor?    We regard the receiver as the corporation, under his name—not its agent or representative, for he is not constituted or appointed by it nor accountable to it, but for all the purposes contemplated by his appointment, the company itself.    He is the agent of the court, acting under its direction, but for the stockholders, bondholders and other creditors of the company, and for the public, as the company itself previously did under the name by which it was incorporated.    What is done by or to or for him, as receiver, is in legal effect done by or to or for the company.    His agents and servants are the agents and servants of the company.    Hence it is immaterial, so far as concerns its liability, under which of several receivers in succession a particular cause of action arose.    If it binds either it binds the company, but the action upon it should be against the company, under the name of the receiver acting when suit is brought.    Such practice seems to us better adapted to secure justice and fairness to all parties and interests concerned, and to involve less of incongruity than any other that has been suggested.

In respect to the merits of the case the contested questions of fact have been stated.    It is admitted by counsel for plaintiff in error, that "upon all the issues made by the pleadings, except the observance of ordinary care on the part of Molohon at the time of the accident, and the operation of the railway by Thomas M. Cooley, and the appointment of defendant as his successor, the evidence was conflicting." This makes it unnecessary for us to review or discuss that evidence, and we do not propose to make further reference

to it, except to say that on the part of the plaintiff below it was not confined, as to any of these issues, to one or two witnesses, nor was it in our judgment such in character or amount as, standing uncontradicted, would barely make a *prima facie* case; but, compared with what opposed, it presented such a question of preponderance as makes its determination by the jury decisive. The issues, if any, as to the appointment of Cooley and of the defendant as his successor in the receivership, have also been disposed of. Upon the only one remaining, that of due care on the part of the deceased at the time of the accident, no direct evidence was introduced or offered, because, as it appeared, no one was able from actual observation to so testify in regard to it. No one living witnessed the accident. The engine was a "wild" one and backing. At the time of collision and for some little time before, the persons upon it were facing and looking the other way. They had not observed the deceased approaching the crossing, nor was anybody else near enough to see how, as to care, they made the approach and came upon the track. But it was shown that the deceased was familiar with the crossing, had frequently driven over it, and was of a careful habit. To the evidence of his habit objection was made, but overruled, and we think rightly—the Supreme Court having expressly held it to be in such case proper. C. R. I. & P. Ry. Co. v. Clark, 108 Ill. 113; Gardner v. C., R. I. & P. Ry. Co., 17 Ill. App. 262. To meet this the topography of the locality, the condition of the right of way and of the highway, and all the circumstances in evidence tending to rebut the inference as to his conduct, on the occasion in question, were before the jury, and doubtless urged for all they were worth. We see no sufficient reason for interference with their finding, and therefore no error in refusing to set aside the verdict on the evidence.

It is said the fourth instruction given on behalf of plaintiff was erroneous, because it limited the inquiry as to the exercise of ordinary care by the deceased, to the time they were killed, and to the time they were in the act of crossing the railroad track; that however negligent they may have been, in failing

to look or listen for, or to heed signals of the approach of the engine, if, while attempting to cross, and at the time they attempted to cross the railroad track they were exercising ordinary care and caution, this, according to the instruction, would be sufficient. We are aware that some courts, on some occasions, have come very near to a recognition of this fineness of verbal criticism, but can not help thinking it unfortunate for the cause of justice. We do not understand that one can justly be said to be in the exercise of ordinary care in attempting, or at the moment of attempting, an act which he knows, or ought to know, is dangerous. If he did not exercise due care to ascertain whether it was dangerous to attempt it, and was injured in the attempt, then the attempt itself was careless, however careful the manner of it. Blondin doubtless exercised the utmost care in the manner of his attempt to wheel a man in a barrow on a rope over the chasm below the falls of Niagara, for the very reason that he knew the attempt was dangerous, and succeeded; but if he had failed would anybody say that in the act, or at the time of the act, he was in the exercise of care? The jury, doubtless, understood the instruction as including what counsel insist should have been expressed. Counsel so understood it, as appears from the quotation last made from their argument, for they speak of the issue as to care by the deceased, as care "at the time of the accident." We are unwilling to take the risk of doing injustice by recognizing any force whatever in this criticism.

It is also complained that the court refused an instruction asked by the defendant, to the effect that if the deceased failed to exercise slight diligence to discover the approach of the engine, and was killed in consequence of such failure, the plaintiff could not recover, even though the servants in charge of the engine were guilty of gross negligence. Such, no doubt, is the law, but it was given in every instruction that required the jury to find, from the evidence, as a necessary condition to a verdict for the plaintiff, that the deceased exercised ordinary care in the premises. We are much inclined to discourage a practice which tends to defeat judgments on

verdicts for no better reason than that the court declined to give instructions which were but repetitions in real substance of those given, but were calculated, by a different form of expression, to convey to jurors the idea that they set forth a different principle, and one more favorable to the case of the party asking it.

Perceiving no substantial error in the record the judgment will be affirmed.

*Judgment affirmed.*