THE CHICAGO & ALTON RAILROAD COMPANY

v.

ALFRED LEGG.

*Railroads— Injury to Stock — Evidence — Opinion — Instructions —*
*Watchfulness—Duty of Trainmen—Damages.*

1. In an action against a railroad company to recover for injuries to stock struck by a train upon its track, the judgment of a witness, derived from an observation of the tracks, of the animals, and other indications, as to the place where they came thereon and as to their direction and speed, is admissible in evidence.

2. Testimony as to experiments made by witnesses to determine whether stock could have been seen by the servants of a railroad company before coming upon its track, the character of the ground and obstructions to the view at the place in question being involved, is admissible.

3. It is the duty of trainmen to use ordinary care in looking ahead, and in discovering whether or not any obstructions are on the track. It is not sufficient to use due care after animals are discovered, if, by the use thereof, they might have been seen in time to avoid an accident.

[Opinion filed November 23, 1889.]

APPEAL from the Circuit Court of Mason County; the Hon. L. LACEY, Judge, presiding.

Messrs. BROWN & KIRBY, for appellant.

As to all of the rulings on the questions quoted (see opinion) the court below was in error. It was competent for the

witness to state and describe the horses' tracks, but it was not for him to tell what conclusions he arrived at. It was the jury's province to do that. His conclusion was a mere opinion.

That this evidence was improperly admitted is settled in this State by the following cases:  Linn v. Sigsbee, 67 Ill. 75; Chicago v. McGivin, 78 Ill. 347; Penn. Co. v. Conlan, 101 Ill. 93.  See also Clark v. Fisher, 1 Paige, 174; Mayor of New York v. Pentz, 24 Wend. 668; Ramage v. Ryan, 9 Bingham, 333; Norman v. Wells, 17 Wendell, 136; Hopkins v. I. & St. L. R. Co., 78 Ill. 32; C. & N. R. Co. v. S. & N. R. Co., 67 Ill. 142; Keith v. Bliss, 10 Ill. App. 424; Collins v. Crocker, 15 Ill. App. 109.

The evidence of the experiments made in October, three months after the accident, in the absence of proof that the conditions were the same, is inadmissible from any standpoint.

As to the instructions, the rule of law applicable to such case is laid down in I. C. R. Co. v. Godfrey, 71 Ill. 509.

"If defendant's servants, who were in the management of the engine, after becoming aware of plaintiff's danger, failed to use ordinary care to avoid injuring him, defendant might be liable."

In T., W. & W. v. Barlow, 71 Ill. 640, it is said:

"The rule of liability in such a case as the present, when an animal is unlawfully upon a railroad track, we conceive to be, that the company is not, in general, liable, unless its servants, after they discovered that the animal was in danger, might, by the exercise of proper care and prudence, have prevented the injury."  Citing Redfield on Rys., Sec. 126; Godfrey v. Ill. C. R. Co., 71 Ill. 500; see also C. & A. R. Co. v. Hill, 24 Ill. App. 619.

Messrs. G. W. ELLSBERRY, T. N. MEHAN and E. LYNCH, for appellee.

Opposing counsel contend that the court erred in giving all or any of appellee's instructions, and in ignoring appellant's theory that its engineer was not guilty of negligence if he

used ordinary care to avoid injuring the animals after he discovered them, even though in the exercise of such care he might have seen them in time to have avoided the collision altogether. The bare statement of this theory at once suggests its harshness and unsoundness. Such was substantially the rule in this State many years ago, but it was overruled and forever laid to rest in I. C. R. R. Co. v. Middlesworth, 46 Ill. 497. In R. R. I. & St. L. R. R. Co. v. Irish, 72 Ill. 406, the court refers to the rule in the Middlesworth case and says, "This has ever since been the ruling of this court." If appellee's first and second instructions are good then all the others are. The first one is a substantial copy of an instruction approved by this court in C. & A. R. R. Co. v. Bock, 17 Ill. App. 17. The second is similar to one fully discussed and approved in T. P. & W. R. R. Co. v. Bray, 57 Ill. 515. See also T. P. & W. R. W. Co. v. Ingraham, 58 Ill. 120; C. & N. W. R. R. Co. v. Barrie, 55 Ill. 227; C. & A. R. R. Co. v. Kellam, 92 Ill. 247; W., St. L. & P. R. W. Co. v. Krough, 13 Ill. App. 434.

As to the evidence excepted to, the case of C. & A. R. R. Co. v. Bock, 17 Ill. App. 17, decided by this court, is directly in point.

CONGER, J. Appellant was, on the 24th day of July, 1888, operating its railroad between the stations Greenview and Mason City, in Mason county, Illinois. Its track was fenced as required by law. About three miles north of Greenview the road ran through pasture lands on which appellee and others had a number of horses pasturing. Some person going through this pasture and over the railroad by way of a farm crossing early in the morning of the above date, left the gate on the west side of the railroad open, and from twelve to twenty of these horses strayed onto the right of way and the north-bound passenger train ran upon and killed or injured eleven of the number, among which there was a pony, a mare and a colt belonging to appellee. The accident occurred about seven o'clock in the morning.

The track was straight, and appellee contended that the

servants of appellant saw, or could by the exercise of reasonable care have seen the horses in time to stop the train and avoid the injury. Appellant denied that the horses were seen in time to avoid the injury, and contended that they suddenly came upon the track, unexpectedly to the engineer, and that so soon as they were observed the engineer did everything in his power to avoid the injury. Appellant introduced evidence to show that the conformation of the ground, vegetation, fences, telegraph poles and hedges were so situated that the horses were obscured from the engineer until they came upon the track. Appellee claimed that the right of way was clear and level, and that there were no obstructions, and that appellant's servants were negligent in not discovering the horses in time to prevent injury to them.

It was stipulated on the trial that the horses of appellee were upon the track of defendant without its fault or permission. Appellee secured a judgment below for $205.

The first objection relied upon by appellant is that the court below erred in admitting incompetent evidence for appellee.

This objection is based upon questions asked of witnesses as to what they saw upon and along the sides of the track at the place of the accident in the nature of obstructions, the character, appearance and locality of the animals' tracks, and the judgment of the witnesses based upon what they observed, as to the place where the animals came upon the track, together with their direction and speed. A sample of these questions and answers as given by appellee when upon the stand, we quote from appellant's briefs.

"Q. State whether or not, at or near the bridge and looking north to where the horses were killed, there was anything to obstruct the view, so that you could not see horses on the track?

"(Objected to by defendant as incompetent; overruled, and defendant excepted.)

"A. Nothing in the way, that I seen. The hedge had been cut back probably a year and had grown up again seven or eight feet high and about four feet thick.

"Q. Were the hedges so located as to obstruct the view of a person coming from the south?

"(Objected to by defendant as asking for the conclusion of witness, and incompetent; overruled; defendant excepts.)

"A.   No; the right of way was fifty feet wide.   I went there later in the season, in October, with Ellsberry, my son, Linn, Melton and Scoville.   On that occasion my son went south from the bridge about a quarter of a mile on the track and sat down on the ties.

" (Defendant objects to the occurrences in October, after the horses were killed; objection overruled, and defendant excepts.)

"I saw him sit down on the ties.   I got down in the ditch, on the east side of the highest grade, probably a hundred feet south of the end of the hedge, on the east side of the track. I think the ditch was six feet deep there.

" Q.   What did you do when you got down to the bottom of the ditch ?

" (Question objected to by counsel for defendant as incompetent; overruled, and defendant excepted.)

"A.   I laid down on my side.

" Q.   State whether or not you looked south.

" (Objected to by defendant as incompetent; overruled, and defendant excepted.)

" A.   I did.

" Q.   What for?

" (Objected to by counsel for defendant as incompetent; overruled, and exception.)

"A.   To see my son; I saw him; he was sitting between the rails, on the ties.   Gus Melton went down with me.  .

" Q.   From the bridge, looking north, you may state to the jury whether or not there was anything to obstruct the view between the bridge and the point were the horses were killed.

"(Objected to as incompetent and asking for conclusions; objection overruled, and defendant excepts.)

.  "A.   There wasn't anything.   On the 25th of July I examined to see if the horses had come on the track at any point. I found where they started to run out of the ditch, and where they got on the track.   I saw their tracks as they went on,.

about a hundred and ten feet south of the hedge.   I found tracks coming up from both sides onto the track.   The track on the east side looked as if it might have been eight or nine horses.

" Q.   If you could tell, from the appearance of the tracks and the indications you saw there, what the gait of the horses was, in coming up on the track, state what, in your judgment, the gait of the horses was?

" (Objected to by defendant as asking for an opinion; over-ruled, and defendant excepted.)

" A.   It must have been running.

" Q.   What do you judge that from?

" (Same objection; same ruling, and exception.)

"A.   From the shape of the tracks; I saw marks of their hoofs on the ties, going north.   The track was ballasted with slag.   I found my horse's shoe on the track, and some pieces of hoof, seven or eight in all, about the size of my finger.   Some were an inch and some a half inch wide, that had bursted off the sides of hoof.   Afterward found slag imbedded in the frog of the horses' feet.

"Q.   From the indications you have described, you may state to the jury what, in your judgment, was the gait the horses were going at—going north on the track?

"(Objected to by defendant as incompetent, and asking for conclusions; overruled, and defendant excepts.)

" A.   They were running."

We do not think appellant's objection to these questions is well taken.   For a witness to state that by actual trial he could stand at one point and see to another, is not expressing an opinion, but is a statement of the fact that there was no obstruction to the sight between such points.   In no other way could he so clearly give the jury the facts, for, after describing the ground, the situation of surroundings and intervening objects, the jury would be unable to say whether such obstructions did or did not interfere with the view of the witness.   In reference to the experiments made by the witness of getting into the ditch at the side of the track and seeing his son sitting down upon the ties at another point, we can see no

objection. It was done to show how the depth of the ditch, the height of grass and weeds, at the distance the two were from each other, would obstruct the vision. Such evidence may not have had much weight with the jury, because the witness in making his observations was not in the same position as the engineer and fireman upon the engine, and because the latter were moving rapidly, with the cares and responsibilities of their station needing their attention, while the witness would be at rest and giving his mind entirely to making these observations; but these circumstances would only bear upon the weight and value of such evidence, and not upon its competency. The statement of the witness that, in his judgment, determining from the appearance of the tracks and the indications that he saw, the animals at a given point were running, was, we think, proper. If one can determine from an inspection of the tracks the gait of the animal making them, we apprehend it would be difficult, if not impossible, to so describe to a jury the peculiarities of the track as to enable them to see them with the eyes of the witness.

It is not unusual for a witness to state that one whom he observed had a pleasant or an angry look upon his countenance. He reaches this conclusion, and may state it to a jury as a fact, and yet, if asked to describe to them the appearance in detail of the face of the person so observed, in order that the jury might determine whether he was right in his conclusion, he could do no more than to reproduce for their benefit the impression made at the time upon his own mind.

The court gave the following instruction :

" The jury are instructed that it is the duty of the engineer and fireman to use ordinary care in looking ahead, when running the railroad train, for the purpose of detecting and discovering anything on the track, to prevent injury and accident; and if the jury believe from a preponderance of the evidence such servants failed to use such care, and by reason thereof they failed to discover the horses in time to prevent injury, and thereby the horses were killed, then the plaintiff, if he used ordinary care in keeping the horses off the track, should recover. This question of negligence should be considered

with reference to all the other duties of the fireman and engineer, and also the fact that the horses might not reasonably be expected to be on the track, and also all the other circumstances in the case, and the servants of the defendant be held, under all the circumstances, to use only such care as a reasonably prudent person would have done under the circumstances."

It is insisted that this and other instructions of the same import are in conflict with the doctrine of the Supreme Court as announced in T. W. & W. Ry. Co. v. Barton, 71 Ill. 640, and of this court in the Hill case, 24 Ill. App. 619. When the facts of those cases and the questions passed upon are noticed, we think the objection made is not tenable.

In the Barlow case, no claim was made that the engineer and fireman had failed in their duty in keeping a proper lookout. The court in that case say:

"About 100 feet from the highway, the engineer, who was looking ahead for a signal to stop at the station, saw two cows approaching the track, in the highway; first saw their heads as they came within range of the headlight of the engine, just as they were coming upon the crossing. * * * The night was dark and the cow could not be seen from the engine until she came within the range of the headlight;" and from that time the court say the engineer did all that he could to prevent injury to the animal, and therefore conclude the company was not liable. It may well be supposed that if there had been a question in that case as to whether the engineer and fireman had neglected to use ordinary care in looking ahead, the holding of the court upon such question would have been in accordance with the instruction complained of in this case.

In the Hill case, *supra*, the reasons given for sustaining the judgment of the court below were that the engineer after he discovered the animal failed to exercise proper care and prudence, so that in that case the question did not arise what measure of care the engineer and fireman of a train should exercise in looking ahead for obstructions upon the track.

We think the instruction given is the law. It requires the

engineer and fireman to use ordinary care in looking ahead when running a railroad train, for the purpose of detecting and discovering anything on the track, and this duty is to be considered in reference to all their other duties.

If the engineer and fireman of appellant fell short of this reasonable and proper measure of their duty, we think it was negligence on their part.

Finding no substantial error in the record, the judgment of the court below will be affirmed.

*Judgment affirmed.*