## Chicago & Alton Railroad Company v. Austin Gibbons, Adm., etc.

1.  VERDICTS—*Against the Preponderance of the Testimony.*—Where a verdict is against the clear preponderance of the testimony, a judgment founded upon it will be reversed.

2.  INSTRUCTIONS—*Calling Attention to the Amount of the Damages Claimed in the Declaration.*—An instruction which calls attention of the jury to the specific amount of damages claimed in the declaration, is subject to criticism but is not necessarily reversible error.

**Trespass on the Case.**—Death from alleged negligence. Appeal from the Circuit Court of Livingston County; the Hon. CHARLES R. STARR, Judge, presiding. Heard in this court at the December term, 1895. Reversed and remanded. Opinion filed June 1, 1896.

WM. BROWN, J. N. BROWN and C. C. STRAWN, attorneys for appellant.

R. S. McILDUFF, attorney for appellee.

MR. JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This is an action on the case to recover for the use of the widow and next of kin of Thomas Comeford, killed on a crossing of appellant's railroad at Dwight, while driving in front of freight cars being switched on a side track.

There was a recovery for $2,500.

The declaration is a very lengthy one and contains many counts. Much space in appellant's printed brief and argument is devoted to the contention that the counts under which evidence was introduced are too general and uncertain.

Appellant did not choose to demur to any of the counts but pleaded to all of them. We shall not in this opinion consider their sufficiency.

The main ground upon which a reversal is asked is that the evidence fails to show any cause of action. The facts as disclosed by the record are as follows:

Thomas Comeford was a farmer, living near Dwight and engaged in the milk business. It was his habit to serve his customers from a covered milk wagon drawn by two horses from house to house. While making his rounds on the evening of October 18, 1894, he had occasion to cross appellant's railroad at its intersection with Chippewa street and Prairie avenue. Chippewa street runs east and west, Prairie avenue north and south, and they intersect at right angles where the railroad crosses them diagonally from southwest to northeast. It was near seven o'clock and quite dark. Comeford approached the railroad from the east on Chippewa street. Before reaching the track he discovered that a freight engine was switching cars, and stopped. The engine with several cars had just gone north over the crossing when the conductor, who was upon the ground assisting in the switching, signaled the engine to back south over the crossing. Just after the signal was given Comeford started his team over in a sharp trot. Before he could clear the side track on which the cars were moving, his wagon was caught and crushed and he was killed.

A witness for appellee named George Webster, testified that just before the signal to back was given he heard some one say " Come on, get a move on you." Two other witnesses testified that they heard some one say " Come on," just before the accident. Neither one of these witnesses testify that the words were addressed to Comeford, or were spoken by any one connected with the train. A boy named John W. Maiden testified that he stood talking with Comeford while the latter was waiting at the crossing; that he heard Comeford ask one of the railroad men if he could go across; that the man said, " Yes, get a hustle on yourself," and that Comeford then started on a trot, when he was struck. Several persons testified that the reputation of this witness for truthfulness was bad. No testimony was introduced to contradict the impeaching evidence and no one seems to have seen Maiden on the ground.

The main point in dispute is whether Comeford was in-

vited to cross by some one of appellant's servants. It is insisted that he was, by the words, "Come on, get a move on you," and that Waugh, the conductor, uttered them. If Waugh did thus invite him, then clearly appellant is liable. Under the evidence heard it is the only ground upon which a recovery can be based; for if Comeford, without such invitation, attempted to cross, his recklessness in so doing must debar a recovery.

Charles Montague, a brakeman assisting in the switching, testified that just before the accident after the train had pulled north and was about to back south, he saw a man passing around the end of the train and he called out to him "Hurry up, get a move on you," but there is no pretense that such remark was made to Comeford. Waugh and Montague, the conductor and brakeman who were controlling by signals the movements of the train at this crossing, both deny that any invitation was given Comeford to cross. They both testify that when he attempted to cross they called out loudly for him to stop and by waiving their lanterns before the team tried to stop him. Two other witnesses, Daniel Morris and James Williams, testify to hearing the calls of Waugh and Montague for Comeford to stop and their efforts to keep him from crossing. Williams himself called out several times for him to stop.

It is uncertain whether Comeford heard the calls to stop or saw the signals. He was almost lifeless when picked up and died within a few minutes after. He was sitting well back in his covered wagon and in the rapid movement of the team and wagon much noise was made.

The clear preponderance of the testimony shows that the deceased was not invited to cross. Maiden was so thoroughly impeached and his testimony is so in conflict with the other testimony that we can not believe him.

The witnesses who testified to hearing the call of "Come on, get a move on you," do not pretend to say that it was made by Waugh or made to Comeford. We think it was the one made by Montague to the man he saw passing around the end of the train. In view of the uncertainty in the testimony

of Webber, Patterson and Boyer, and the positive denial of Waugh and Montague, and the testimony showing the efforts of Waugh and Montague to stop Comeford from crossing, we do not see how the verdict can stand.

The testimony offered by the defendant that Comeford was habitually reckless in making crossings in front of moving trains was properly rejected, because there were eye witnesses to the injury. Chicago, Rock Island & Pacific Ry. Co. v. Clarke, 108 Ill. 113. The first instruction given for the plaintiff is subject to criticism because it embodies the doctrine of comparative negligence, which is now obsolete in Illinois.

The fifth and sixth instructions given for the plaintiff are subject to criticism, because they call the attention of the jury to the specific amount of damages claimed in the declaration and allowed by statute. Such a practice has been frequently condemned by the Supreme Court and this court. The vice of it is that it amounts to a persuasive argument from the court to the jury to render a large verdict. In view of the amount of damages allowed in this case we can not see that these instructions worked harm to the defendant, however.

The objectionable instructions are of but minor consideration and we should not disturb the judgment if we could feel that substantial justice has been done.

We merely mention them that they may be avoided on another trial. Reversed and remanded.