# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## FOURTH DISTRICT—AUGUST TERM, 1899.

Cleveland, C., C. and St. L. Ry. Co. v. Samuel Moss, Adm.

1. ORDINARY CARE—*May be Inferred, When.*—In the absence of direct proof, ordinary care may be inferred from proof of the habits of the deceased.

2. TESTIMONY—*When Statement of Witness is One of Fact and Not an Opinion.*—Whether one can see a train from a given position may call for an opinion, if the person asked has never seen a train from such a position, and is not entirely familiar with the position; but if he has under such conditions seen a train, or is so familiar with the surroundings as to know that a train can be seen, his statement is a statement of fact and not an opinion.

3. INSTRUCTIONS—*Stating General Propositions of Law Not Disputed.*—Instructions stating propositions of law which are not disputed or in any way called in question may not alone be cause for reversal, in all cases, but the giving of them should be avoided as serving no useful purpose, and as tending to direct the attention of the jury to issues not in controversy.

4. EVIDENCE—*Of Cautious Habits of Deceased—Incompetent Where There Is an Eye Witness.*—Evidence of the cautious habits of deceased is incompetent where there is an eye witness of the occurrence.

Action in Case, for personal injuries. Appeal from the Circuit Court of Pulaski County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Heard in this court at the August term, 1899. Reversed and remanded. Opinion filed March 16, 1900.

**Statement.**—This suit is brought by appellee, the father and administrator of the deceased, for the killing of James Perry Moss, through the alleged negligence of appellant.

The deceased, on the 3d of February, A. D. 1899, an unmarried man, twenty-one years of age, in attempting to cross appellant's track at a public highway, was struck and injured by appellant's regular passenger train No. 2, going northeast from Mound City toward Olmstead, and on the 5th of February died in consequence thereof.

The track of the railroad running from Mound City toward Olmstead, runs about northeast. The highway crosses the railroad at Wolf's crossing, about one and one-half miles southwest of Olmstead, and about nine and one-half miles northeast of Mound City. In going toward Olmstead the highway approaches the railroad track within about 100 yards, at a point some half mile south of Wolf crossing; then it bears off from the railroad track and runs about north until, at the house of Henry Bohm (which is about 2,000 yards east of the railroad track, and about a quarter of a mile from Wolf crossing), it makes a square turn to the west and crosses the track at Wolf's crossing.

At the crossing, both the railroad track and the highway are below the natural surface of the ground some five to seven feet. This cut on the railroad track, gradually decreases toward Mound City until, about 300 yards from the crossing, the cut runs out and the railroad track is on the surface, and continues so for a mile or more south, or toward Mound City.

When the railroad was built there was left a ridge of earth, some one and one-half to two feet high, on the top of the railroad bank on the eastern side of the cut, extending south from the crossing.

In going along the highway from Mrs. Harper's house to Wolf crossing, which is about a quarter of a mile from the house, the evidence tends to show that one on foot or in a wagon, can see the trains approaching from the south all the way, except while crossing a small narrow depression in the

C., C., C. & St. L. Ry. Co. v. Moss.

wagon road about 400 feet from Bohm's house, and 500 to 600 feet from the crossing, and, until one gets within 100 feet of the crossing, where the bank of the cut on the south side of the wagon road obstructs the view until within thirty-five or forty feet of the crossing, when one can again see down the track.

On the afternoon of the accident, the train reached Wolf's crossing on its regular time, about 3:20 P. M., running at its usual speed, thirty to thirty-five miles an hour.

Deceased left Mrs. Harper's house after the clock had struck three. Mrs. Harper, a witness for appellee, says she watched him go down the road, and as he was about out of sight, she heard the train whistle at the trestle about a quarter of a mile south of her house. He was in a sleigh, driving two mules which would frighten at moving cars, and had prior to that time often tried to run away. He had on a mackintosh, drove with his right hand, and in his left held a small umbrella over him. It was raining, and as long as he was in her sight, which was until he went down a little hill just before he got to Bohm's house, he was driving in a slow trot. Bohm testifies that he had just passed his house a minute or two when the train came along and whistled for the Wolf crossing.

No one saw him after this and before he was struck, except T. W. Bell, the engineer. He says, when he gave the signal for the Wolf crossing, a quarter of a mile south of the crossing, he saw a team standing still in the highway 150 or 200 feet east of the crossing, but whether it was deceased's team or not he did not know. As he approached the crossing, when thirty-five or forty feet away, he saw deceased drive his team in a trot onto the track in front of the engine. The engineer set his brakes, but before he could reach the whistle, deceased was struck. Deceased was raised in the neighborhood of the crossing, and was familiar with its conditions and the time of the passing of regular trains.

The declaration contains four counts.

The first count charges careless and improper management of train.

The second count avers that no bell or whistle was sounded.

The third count alleges that the railroad at the crossing was, to wit, fifteen feet below the level of the ground, and that there was an embankment on the eastern side of the railroad approaching the crossing, so as to make it impossible to see a locomotive coming from a southerly direction, until one was within, to wit, five feet of the crossing, and that in view of these conditions, it was the duty of defendant to exercise great care and caution in managing its trains when approaching the crossing, but that defendant so carelessly and negligently drove its engine, etc.

The fourth count avers the condition and situation of the crossing substantially as in the third, and avers that by reason of said condition and of the careless and negligent management of the train by the servants of defendant, the deceased was struck, etc.

Issue was joined upon plea of not guilty.

Judgment for plaintiff for $995.

C. S. CONGER, attorney for appellant.

L. M. BRADLEY and CHAS. L. RICE, attorneys for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

Appellant, at the close of appellee's testimony, and also after all the evidence was in, moved the court to instruct the jury to find for defendant. The court refused the motion. In this there was no error.

A case was presented that required the findings of a jury.

It is urged as error that appellee was allowed to prove the cautious habits and character of the deceased. When appellee closed his case, it did not appear that there was any eye-witness to the accident.

It was not, then, error to receive evidence of his habits as to being cautious and prudent. In the absence of direct proof, ordinary care may be inferred from such proof. Mo.

Furnace Co. v. Abend, 107 Ill. 44; C., R. I. & P. R. R. v. Clark, 108 Ill. 113; T., St. L. & K. C. R. R. v. Bailey, 145 Ill. 159.

Henry Bohm, a witness for appellant, testified that he saw the deceased pass his house, and in a minute or two he heard the train whistle for the crossing; that " from where he passed my house to the Wolf crossing, I guess it would be close to a quarter—not quite a quarter of a mile;" that it was between a sleet and a rain, and that the young man had an umbrella over his head. He was asked to tell the jury how he was driving, with reference to speed. The question was objected to, the objection sustained, and appellant excepted. We think the witness should have been allowed to answer this question. Under the condition of the weather, the situation of the deceased, holding an umbrella with one hand and driving a span of mules that are shown by the evidence to be afraid of moving trains, his knowledge of the dangerous character of the crossing he was approaching, and that a regular train was due about that time, the answer might have thrown some light upon the issue of ordinary care on the part of the deceased. While it might not have had much weight in showing how he was driving at the crossing, to prove how fast he was driving a quarter of a mile from the crossing, still, under the circumstances, it might have thrown some light upon this issue. If it would have done so, the evidence would have been competent. The relevancy of testimony is for the court to decide; the weight to be given to it, is for the jury.

For the same reason the court should have allowed the witness Dan Echols to answer the question at what points upon the highway between Bohm's house and the crossing he could see a train approaching from the south. It was not objectionable upon the ground that it necessarily called for an opinion. Whether one can see a train from a given position, may call for an opinion if the person asked has never seen a train from such position, and is not entirely familiar with the situation. But if he has under such con-

ditions seen a train, or is so familiar with the surroundings as to know that a train can be seen, his statement is a statement of fact and not an opinion. Ill. C. R. R. Co. v. Swisher, 53 Ill. App. 411; C. & A. R. R. Co. v. Legg, 32 Ill. App. 218; Wharton's Law of Ev., Vol. 1, Secs. 570–571.

It was clearly pertinent to show that the deceased, riding in a sleigh, carrying an open umbrella in one hand, and approaching a dangerous crossing at a time when a train was due, and driving a span of mules that were afraid of cars and inclined to run away, could, by looking, have seen the train at some distance from the crossing. It was for the jury to say whether a failure to look for a train under such circumstances tended to prove want of ordinary care, and the ability to see the train was a necessary element in passing upon the question.

Instruction No. 1 for appellee was not pertinent to the case. The safe crossings required by statute refer to track crossings and the approaches thereto on the highway. There is no allegation and no evidence to show that either the crossing or its approaches were unsafe.

The third instruction for appellee states a general proposition of law, which was not disputed, or in any way called in question. While such general propositions, stated in instructions, may not alone be cause for reversal in all cases, the giving of them should be avoided as serving no useful purpose, and as tending to direct attention of the jury to issues not in controversy.

The same objection applies to the sixth instruction.

Appellee's thirteenth instruction is as follows:

"If the jury believe from a preponderance of the evidence that the deceased, James Perry Moss, was a careful, cautious man at the time, and immediately preceding the alleged injury to him, then you have a right to consider this evidence, with all the evidence in the case, as to whether the deceased was using such due care and caution as an ordinarily prudent man would have used under like circumstances at the time of the alleged injury."

It is said in this opinion, *supra*, that it was not error to admit evidence of the cautious habits of deceased, there

being no testimony, when such evidence was offered, that there was any eye witness of the occurrence. Appellant, however, introduced a witness, whose testimony was not contradicted, who saw what occurred, and also witnesses who testified as to the deceased's situation and surroundings in the sleigh, and his manner of driving at points not far distant from the crossing.

T. W. Bell, the engineer of the train, testifies that he saw deceased "come driving on the crossing. He was driving a span of mules about as fast as he could make them go. He was coming in a trot. I was looking right at him." This was an eye witness of the immediate circumstances of the collision. After the introduction of this evidence by appellant, there was no motion to strike out the testimony relating to the cautious habits of the deceased.

While this left the testimony of the character of the deceased for caution and prudence still before the jury, the fact that there was an eye witness of the occurrence made such evidence incompetent. It was, therefore, error to instruct the jury that if they believed from the evidence that the deceased was "a careful and cautious man at the time of the alleged injury," that they had a right to consider this in connection with the other evidence in the case.

Judgment reversed and cause remanded.