BOWER vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

*November 6 — November 25, 1884.*

RAILROADS: NEGLIGENCE. *(1) Injury to vehicle at highway crossing: Nonsuit. (2) Vigilance necessary while approaching track. (3) Court and jury. (4) Evidence: Usage.*

1. Upon the evidence in this case it is *held* that the trial court properly refused to nonsuit the plaintiff whose team and wagon were struck and injured by a detached locomotive running rapidly in advance of a belated passenger train, at a highway crossing near a village, the testimony as to the possibility of seeing the locomotive while in a deep cut through which it passed just before reaching the crossing, and as to whether the bell was rung and the whistle blown, being conflicting, and there being evidence that after seeing the locomotive the driver could not have safely stopped his team or turned it into a side road.

2. A person approaching a railway crossing with a team and having reason to suppose that a regular passenger train has recently passed from one direction, is not guilty of negligence if he fails

to look constantly in that direction, especially when it would be impossible to see or hear an approaching train because of an embankment or other obstruction to sight and sound.

3. An instruction that it was the duty of a person approaching a railway crossing to have looked up the track if by so doing he could have ascertained the approach of a train at a *sufficient distance* to have avoided it, is *held* proper. The question what was such sufficient distance was for the jury.

4. The question being whether the bell was rung and the whistle blown as a locomotive approached a highway crossing, evidence that those things were not done at a similar crossing three miles distant was admissible.

APPEAL from the Circuit Court for *Walworth* County.

Action to recover damages for injuries to the horses, wagon, and goods of the plaintiff, alleged to have been caused by the negligent running of a locomotive on the defendant's railroad. The facts sufficiently appear from the opinion. At the close of the plaintiff's testimony a motion for a nonsuit was denied; and a request, made when both parties had rested, that the court direct a verdict for the defendant, was also denied. There was a verdict for the plaintiff assessing his damages at $175; and from the judgment entered thereon the defendant appealed.

For the appellant there was a brief by *John W. Cary, D. S. Wegg,* and *Burton Hanson,* and oral argument by *Mr. Hanson.* They contended, *inter alia,* that the evidence conclusively showed negligence on the part of the driver, and that a nonsuit should have been granted or a verdict for the defendant directed; also that the court erred in refusing the following instruction, among others, asked by the defendant: If you find that the driver of the team when within seventy, sixty, fifty, forty, thirty, or twenty feet of the railroad track could have seen the approaching train if he had looked, or if a prudent person in the exercise of ordinary care and foresight would have seen the approaching train under like circumstances, then the plaintiff cannot

Bower vs. The Chicago, Milwaukee & St. Paul R'y Co.

recover in this action." *Terre Haute & I. R. R. Co. v. Clark*, 6 Am. & Eng. R. R. Cas. 86; *Rothe v. M. & St. P. R. R. Co.* 21 Wis. 256; *Kearney v. C., M. & St. P. R'y Co.* 47 id. 145; *Schaefert v. C., M. & St. P. R'y Co.* 62 Iowa, 624; *Salter v. U. & B. R. R. R. Co.* 75 N. Y. 273; *Donaldson v. M. & St. P. R'y Co.* 21 Minn. 293; *Brown v. M. & St. P. R'y Co.* 22 id. 165; *Schofield v. C., M. & St. P. R'y Co.* 8 Fed. Rep. 488; *Railroad Co. v. Houston*, 95 U. S. 700; *Continental Imp. Co. v. Stead*, id. 164. The evidence as to whether the bell was rung and whistle blown at the crossing near Springfield, three miles west of Lyons, was irrelevant, and its admission should work a reversal. *Gibbons v. Wis. V. R. R. Co.* 58 Wis. 335; *Morse v. M. & St. L. R'y Co.* 30 Minn. 466.

For the respondent there was a brief signed by *Fish & Dodge*, of counsel, and oral argument by *Mr. Fish*.

ORTON, J. A servant was driving the team of the plaintiff hitched to a wagon for the carriage of pop, soda-water, etc., of peculiar construction and of considerable value, on the street or highway leading into and through the village of Lyons, and towards a crossing of the railroad, and when one quarter of a mile from the crossing he looked at his watch and found that it was a few minutes past 4 o'clock P. M., and looked westward on the track of the railroad and could not see any train approaching, and especially the passenger train which was due before that time. He then drove on at a walk towards the crossing, and when about fifteen rods therefrom he looked again and neither saw nor heard anything of the train or a locomotive west of the crossing, and when within ten or twelve feet from it he first saw and heard a disconnected locomotive approaching the crossing at great speed, and he attempted to urge on his team as fast as possible to cross the track before it, and the rear end of the wagon was struck by it with great force, and the team,

wagon, and contents were damaged. This locomotive was being run by itself, about five minutes in advance of the passenger train a short time before then due at such crossing; and approached the crossing through a deep cut of some four or five hundred feet in length, and of increasing depth from its commencement at its west end, and from the crossing towards the west, to or near its center, where its greatest depth was eight feet. The embankment towards the approaching train was covered with tall weeds and grass, and there was evidence that the locomotive or its smoke-stack could not have been seen by the driver until he was from ten to fifteen feet of the crossing. There was evidence that the team could not have been safely stopped or turned away when the locomotive was first seen and heard, and that the only safe way was to drive on and if possible escape it. As to whether the locomotive could have been seen when the team was at several distances up to a hundred feet away from the crossing the evidence was conflicting, and it was very conflicting as to whether the bell was rung or whistle blown when the locomotive approached the crossing; but the whistle gave two short "toots," as it was called, just at the crossing, and when the wagon was struck. This crossing was about 300 feet from the depot in the village, and the locomotive ran by it with great speed. There was some evidence that there was a road leading off from the one on which the team was driven towards the east, near the crossing, into which the team might have been turned, but the driver testified that he could not have turned them into it safely. The jury were taken upon the ground, and viewed the situation of the crossing and its surroundings, and by such view are presumed to have tested the correctness of the testimony relating to the road leading east from the south side of the crossing, and to the possibility of seeing the locomotive in the deep cut at certain distances on the road, approaching the crossing from the south, and to the

obstructions in the way of seeing it, and must be presumed to have found that the driver could not have safely stopped his team when near the crossing, or turned into the road leading east, and that he could not have seen or heard the locomotive in the deep cut in time to have avoided the collision.

On this statement of the facts, which, though brief, is believed to be fair, we do not think the circuit court would have been justified in granting a nonsuit, or in ordering a verdict for the defendant, as requested by its learned counsel. The driver may have well supposed that the passenger train had already passed the crossing when he looked at his watch and found by it that it was after 4 o'clock, and after its usual time of passing; but he looked up the track to the west at least twice before he came very near the crossing, and saw and heard nothing of the train or locomotive. He had no reason to suppose that there was a locomotive five minutes ahead flagging the train. If it had been the train it would have made considerable noise, and he might have heard it if he did not see it; but a detached locomotive, which makes but little noise, he might not have heard, if the bell was not rung or the whistle blown, as the jury might have found from the evidence. At the great speed at which the locomotive was running it took it but a few seconds to pass through the deep cut, and it certainly cannot be said that it was negligence in law that the driver did not see it, or might have seen it had he looked just at the time it was in the cut. It would not be a want of ordinary care if he did not look in the direction of this unexpected locomotive *all* the time while he was approaching the crossing, for his team required some of his attention. The large and stationary umbrella over his head does not seem to have obstructed his view in the least.

The plaintiff's servant does not appear to have been guilty of any want of ordinary care. As to the defendant com-

pany, if the bell was not rung or the whistle blown when the locomotive was approaching this crossing, and the locomotive was run with great speed in order to keep it out of the way of the passenger train, which was evidently running to make up lost time, and all these facts the jury might have found from the evidence, it was certainly guilty of great negligence and want of care. The village of Lyons, in which this crossing was situated, was not such as to limit by law the speed of trains to six miles per hour in crossing its streets; and yet it was quite a village, and had streets much used, and a depot, and it would seem to be reasonable that neither trains nor detached locomotives should be run through such a village and by the depot at a very high rate of speed, when no possible signals might in all cases protect persons lawfully traveling over the street crossings.

The charge of the court was unusually clear, correct, and full on all questions of law affecting the case. The jury were told that it was the duty of the servant to have looked up the track when he approached the crossing, and " if, by using his eyes in looking and his ears in hearing, he could have ascertained the approach of the train at a *sufficient distance* to avoid the same, and thus prevented the accident in question, then it was his duty so to make use of his eyes and ears; and plaintiff cannot recover if his servant failed to do so and the accident was caused or directly *contributed* to by such failure." This instruction was excepted to because the court did not tell the jury what was such *sufficient distance*. That was clearly a question of fact for the jury, and not of law for the court.

All of the seventeen instructions asked by the learned counsel of the defendant, except four, related to the use of the eyes and ears of the driver, and his duty to look and see and listen and hear the approaching locomotive before he came to the crossing, and they are all objectionable as making it the duty of the driver to have looked all the time and con-

stantly in that direction and at every point within 100 feet of the crossing. This, as we have said, was not a reasonable requirement of the driver, and, besides, such an instruction should be qualified, and the duty of the driver would be modified by the condition that, if he had looked, he could have seen, and if he had listened he could have heard, the approaching locomotive in time to have avoided the collision. Of the other four instructions asked, two relate to the contributory negligence of the plaintiff, and were substantially given in the general charge, and the other two are general and abstract propositions of law as to the relative duties of drivers of wagons over crossings, and of the engineer or those in charge of trains approaching crossings, which duties were very clearly defined by the court in the charge in reference to the case on trial, and that alone was sufficient.

A witness was asked on behalf of the plaintiff whether the bell of this locomotive was rung or its whistle blown when it was approaching at this time a crossing three miles west of Lyons, in the village of Springfield. This question was objected to by the counsel of the defendant, and the objection was overruled, and the witness answered the question in the negative. As to whether the bell was rung or the whistle blown at the Lyons crossing the evidence was conflicting. This evidence had a direct bearing upon that question, and had some weight, and might properly have had, against the testimony of the defendant's witnesses that the bell was rung and whistle blown at the crossing in question, and supporting the testimony of the plaintiff's witnesses that they were not. It related to the manner in which *this* locomotive was managed and run on this very trip, and near the place of the accident, in using such signals at street or road crossings, and would establish more than a *possibility*, from which a *probability* could be inferred, that no such signals were used at the Lyons crossing, and would create a

strong and direct probability that they were not, because it was not customary to use such signals at other like crossings. Such testimony is approved by the current of authority, when confined to the usage of the same machinery.    Many of the cases are cited in *Gibbons v. Wis. V. R. R. Co.* 58 Wis. 335, and in that case such evidence is approved.

These are all the questions raised on this appeal.    The case was tried at the circuit and argued in this court by able counsel, and nothing was omitted on either side which could have any possible bearing upon the result.    On the whole record we have been unable to find any error.

*By the Court.*— The judgment of the circuit court is affirmed.