## James H. Cox, Adm'r, v. Chicago & N. W. Ry. Co.

1.  EVIDENCE—*Of Habits of a Person Killed in a Railroad Collision in the Absence of Eye Witnesses.*—In actions for negligently causing the death of another, where there are no eye-witnesses, evidence is admissible as to the habits of the deceased, in order to supply the want of other proof of due care at the time of the injury, but such evidence is admissible only as a matter of necessity in the absence of better proof.

2.  SAME—*Testimony of Witnesses Before a Coroner's Jury, When Admissible for the Purpose of Impeachment.*—When the necessary foundation is laid for its introduction, the evidence of a witness before a coroner's jury is admissible for the purpose of contradicting any material statement of such witness on the trial.

3.  RAILROADS—*Statutory Signals.*—The statute does not require the giving of signals of the approach of a train to a highway crossing so as to enable persons to have absolute notice of its approach and avoid being injured. If the company has upon its engine such a bell as the statute requires and it is rung in the manner required, then so far as giving signals before its train reaches a highway crossing is concerned, it is immaterial whether such signals are heard or heeded by persons attempting to cross the railroad track at such crossing.

4.  SAME—*Speed of Trains in Villages.*—In the absence of an ordinance regulating the speed of trains through a village, it is not negligence *per se* to run a train at the rate of thirty-five or forty miles an hour.

5.  CORONER'S VERDICT—*Where to be Disregarded.*—The statute gives a coroner's jury no power to make a finding as to the responsibility of a railroad company as to the death of a person killed in a collision, and such a finding, if made, is of no binding force as against a railroad company in an action by the representatives of such person.

Trespass on the Case.—Death from negligent act. Appeal from the Circuit Court of McHenry County; the Hon. CHARLES E. FULLER, Judge, presiding. Heard in this court at the April term, 1900. Affirmed. Opinion filed October 11, 1900. Mr. Justice DIBELL dissenting.

C. P. BARNES, attorney for appellant.

JOHN B. LYON, attorney for appellee.

MR. JUSTICE CRABTREE delivered the opinion of the court. This was an action on the case brought by appellant as administrator of the estate of Lewis H. Cox, deceased, to recover damages for the death of the intestate, who was

killed by one of appellee's trains of cars at the village of Cary in McHenry county, on the evening of September 8, 1895. The accident occurred between 8:30 and 9 o'clock on Sunday evening. Deceased and a companion named Sweet, were driving in a covered buggy with the top up, and attempted to cross the tracks of appellee, and while so doing were struck by a passenger train and both killed.

The declaration contained four counts. The first charged negligence in failing to give the statutory signals. The second averred that Main street in the village of Cary, where deceased was killed, was the principal street in the village, traveled by a large number of people, and that it was the duty of appellee to run its trains of cars over said street at a slow rate of speed, but charged that at the time of the accident appellee negligently ran the train which killed plaintiff's intestate, at a high and dangerous rate of speed, to wit, at the rate of forty miles per hour, by reason whereof deceased was struck and killed.

The third count was similar to the second but charged in addition that the agents and employes of appellee recklessly, maliciously and wantonly ran and drove the engine and train at a high and dangerous rate of speed across said public street "and that by reason thereof the agents, servants and employes willfully, maliciously, recklessly and wantonly ran the said engine upon and over the plaintiff's intestate while he was crossing said tracks on said public highway, exercising due care and caution for his own safety."

The fourth count averred the duty of appellee to exercise due care and caution to observe any and all persons attempting to cross the tracks, and charges that the servants of appellee "negligently, willfully, maliciously and wantonly failed and neglected to use any care or caution to observe or see persons then and there attempting to cross the said tracks on said public street, and by reason of the failure of appellee's agents and employes to exercise any care or caution to avoid striking persons with said engine, the same was then and there willfully, wantonly and recklessly run

over plaintiff's intestate while he was attempting to cross said tracks in the exercise of ordinary care and caution for his own safety."

There was a plea of the general issue and the cause was tried by a jury, who returned a verdict of not guilty, upon which the court entered judgment against appellant, to reverse which he prosecutes this appeal.

The facts, as we gather them from the record, are that the village of Cary is a small railroad station on the line of appellee's railroad, containing about 500 inhabitants; that the railway passes through the village in a northwesterly and southeasterly direction; that Main street is the principal thoroughfare in the village, and runs in an easterly and westerly direction across the railway tracks of appellee, not far from the station building, at which point there were three tracks, consisting of a central, or main track, and two side tracks, one easterly and the other westerly from the main track and distant therefrom about ten feet on each side. The west side track ran near to the station platform and continued in the same direction along appellee's right of way across Main street. There was evidence as to certain cars standing upon the tracks which, in a measure, obstructed the view, but as the declaration contains no charge of negligence in this regard, we need not take time to consider this evidence.

On the afternoon of the accident, deceased and his companion, Sweet, who both lived at Nunda, some five or six miles north of Cary, drove down to the latter place in a single buggy, arriving at Cary between three and four o'clock. During the evening they attended a "christening" at the house of one Washer, a saloonkeeper in Cary. The "christening" appears to have been a merry party, at which beer flowed freely. At about half-past eight o'clock, deceased and his companion started for home in a covered buggy, with the top up, and drove into Main street from the south, on a sharp trot, at a turning about ten rods from the railroad tracks, at about the time when the prolonged whistle of the engine drawing the passenger train was

sounding for the station. They proceeded at the same rate
of speed until they reached the westerly side track, when
the horse was so suddenly brought to a walk, that, as some
of the witnesses say, his feet "slid," but he was immediately
started up again, and the buggy just reached the main track
when the engine of appellee's passenger train collided there-
with, killing deceased and his companion instantly. Cary
was not a stopping point for this train, which was due
there at that time, at 8:40 p. m. The time at which it
passed through the village on the evening of the collision
is not fixed with certainty by the evidence, but it seems to
have been slightly behind time.

We think the evidence fairly shows that the train was
running at a rate of speed not exceeding thirty-five or forty
miles an hour. Several witnesses saw the deceased and his
companion in the buggy when they drove up to the west
side track, where the horse stopped, and saw them imme-
diately start forward again, although no witness testifies to
seeing them at the precise moment of the collision, which
occurred instantly after the horse started forward again.
The first point relied upon for reversal is that the court
rejected evidence concerning the habits of deceased as to
the exercise of due care.

The rule has frequently been recognized in this State, in
actions for negligently causing the death of another, that
when there are no eye-witnesses to the accident, evidence
may be received as to the habits of due care of the deceased,
in order to supply the want of other proof of due care at
the time of the injury. (C., R. I. & P. R. R. Co. v. Clark,
Admx., 108 Ill. 113; I. C. R. R. Co. v. Ashline, 171 Ib. 313;
Dallemand v. Saalfeldt, 175 Ib. 310.) But this class of
evidence is an exception to the general rule, and is only
admissible as a matter of necessity in the absence of better
proof. C., B. & Q. R. R. Co. v. Gunderson, 65 Ill. App. 638.

In the case at bar we fail to see how the rejected testi-
mony could have shed any light upon the question whether
or not deceased was in the exercise of due care at the time
he was struck and killed. So far as that issue was con-

cerned, it may be fairly said there were eye-witnesses to the accident. True, they did not see the actual collision, but they saw all the circumstances up to the instant it occurred, and from which the question of due care should be determined. We think there was no error in the ruling of the court on this point. Thus holding, we do not regard it as being in conflict with anything contained in our opinion in C., R. I. & P. Ry. Co. v. Downey, 85 Ill. App. 175.

The second point relied upon by appellee is, that the court erred in refusing appellant's offer to read the evidence of the witness Chittenden, taken before the coroner's jury, to impeach his statements on the trial.

There is no doubt that under proper circumstances, and when the necessary foundation is laid for its introduction, the evidence of a witness given before the coroner's jury may be introduced for the purpose of contradicting any material statement of his made upon the trial. We think no proper foundation was laid in this case for the introduction of the evidence rejected. The witness simply identified his signature, but was given no opportunity to examine the contents of the instrument to which it was affixed, nor was there any competent proof as to the authenticity of the document as the report of evidence taken before the coroner's jury.

Under the circumstances, we think the evidence was properly rejected. Gardner v. C., R. I. & P. Ry. Co., 17 Ill. App. 262.

It is also assigned for error that the court, in the second instruction given for appellee, told the jury:

"The statute requires every railroad corporation to cause a bell of at least thirty pounds to be rung, or a steam whistle to be sounded at the distance of at least eighty rods before a public highway is reached by a train or locomotive, and kept on ringing or being sounded until the highway is reached, and when this is done, the railroad company has discharged its duty imposed by the statute, whether such signal is heard or not. The statute does not require the giving of such signals of the approach of a train so as to enable others absolutely to ascertain its approach or avoid being injured. If the railroad company has such a bell on its engine,

attached to the train as the statute requires, and it is rung in the manner required, then, so far as giving signals before a train reaches a public highway crossing is concerned, the company is without blame, whether the signal so given is observed or heeded or not by one attempting to cross the railway track on a public highway."

It is contended that the latter part of the instruction is erroneous in that it ignores the duty of the railroad company to give other and different signals in case the circumstances or necessities of the case require it in the exercise of due care. We think the point is not well taken.

The grounds of negligence charged in the declaration were a failure to give the statutory signals and running the train at a high and dangerous rate of speed. No other negligence was charged. If it was the duty of appellee, under the circumstances, to have given any other signals, the duty should have been pointed out and its omission charged in the declaration. The instruction under consideration was no doubt given to inform the jury as to the duty of appellee concerning the giving of the statutory signals and to meet the charges of the declaration in that regard. Taken as a whole, we are of the opinion it was not erroneous.

It is further contended that the court erred in its instructions to the jury concerning the duty of a person approaching a railroad crossing and in telling them what such person should or should not do to be in the exercise of due care.

We think in this respect some of the instructions are open to criticism and should not have been given. To some extent it may be admitted they invade the province of the jury. But as in our view of the case appellant was not entitled to recover in any event because of the absolute want of due care and reckless conduct of his intestate, these instructions could have done him no harm. Taken as a whole we think the evidence so clearly preponderates in favor of appellee on all the material issues in the case, that the judgment in its favor ought not to be reversed because of the errors in the instructions referred to. There was

nothing whatever in the evidence to show that the servants of appellee were guilty of any wanton or willful conduct. So far as appears the train was not being run at a higher rate of speed than its usual time required, and in the absence of a municipal ordinance regulating the rate of speed through a village or city it can not be said to be negligence *per se* to run a train at the rate of thirty-five or forty miles per hour. There being, then, no evidence to support the charge of willful and wanton conduct on the part of appellee's servant in running the train, it was not error for the court to instruct the jury that no recovery could be had upon the counts of the declaration charging such willful and wanton conduct.

The verdict of the coroner's jury was admitted in evidence which, after finding that deceased and his companion came to their death by being struck by the passenger train of appellee on the railroad crossing in Cary, found further, as follows:

"We further find that the aforesaid company is responsible for said deaths on account of fast running and the view to the track being obstructed by cars and depot."

The court instructed the jury to disregard the latter portion of the verdict which we have above quoted, and this is assigned for error. The statute makes it the duty of a coroner's jury " to inquire how, in what manner, and by whom or what, the said dead body came to its death, and of all other facts of and concerning the same, together with all material circumstances in any wise related to or connected with the said death, and make up and sign a verdict and deliver the same to the coroner." (Sec. 14, Chap. 31, Rev. Stat.) As we construe this provision of the statute, it gave the jury no power to make the finding as to the responsibility of appellee embodied in the verdict as to the death of appellant's intestate. Within the scope of the jury's authority their verdict became a public document and competent evidence; beyond that their mere expression of opinion as to the guilt or responsibility of the party causing the death, it seems to us ought not, and can not, be of any

binding force as against such party, when that question is brought to trial before a petit jury. We have not been referred to any case in which our Supreme Court have passed upon this precise question, nor have we been able to find any; but in C., M. & St. P. Ry. Co. v. Staff, 46 Ill. App. 499, and Lake Shore & M. S. Ry. Co. v. Taylor, Ib. 506, the question was squarely presented, and it was held that such an instruction as that given in the case at bar was proper, and for a refusal to give it the judgment of the court below in each case, was reversed. We concur in the view expressed in the opinions in those cases, and hold there was no error in directing the jury to disregard that portion of the verdict of the coroner's jury finding that appellee was responsible for the death of deceased and his companion. See also P. C. & St. L. Ry. Co. v. McGrath, 115 Ill. 172.

This, we believe, disposes of all the points made for reversal of sufficient importance to be considered, and on a consideration of the whole case we see no good reason for reversing the judgment. Without discussing the evidence in detail, we are of opinion it shows such a reckless disregard for his own safety on the part of the deceased, and such an entire want of due care as to bar a recovery. The jury could not well have come to any other conclusion, and their verdict was fully warranted by the evidence. The judgment will therefore be affirmed.

Mr. Justice DIBELL dissenting.