complaint dismissed as to the alleged agent, and was in this court on appeal, as against the principal only, as our records show.)

In the Municipal Court case a good cause of action was alleged, a sale of the automobile by the Thompson Company as principal, and a warranty by it as principal on such sale. It would seem, therefore, that the defendant should have been permitted to prove the counterclaim, and have such benefit thereof as he was entitled to. It is not necessary to determine now just what benefit he could derive from the proof of the counterclaim. He had some rights, apparently, under sections 2862, 2863, 3226, 3227 and 2947–2949.

If we are right in the views here expressed, a reversal of the judgment of both courts, and a new trial, must result.

Second. We do not deem it essential to review the evidence upon the question of the reduction by the County Court of the judgment of the Municipal Court. The evidence may be different upon the new trial, and this question may not be involved. All concur, except Mc-LENNAN, P. J., not sitting.

---

PARSONS v. SYRACUSE, B. & N. Y. R. CO.

(Supreme Court, Appellate Division, Third Department. June 24, 1909.)

1. RAILROADS (§ 347*)—ACCIDENT AT CROSSING—EVIDENCE—HABIT—SPECIFIC ACTS OF CAREFULNESS.

   Where, in an action for death of a traveler in a collision at a railroad crossing, there was no eyewitness of the accident except defendant's engineer, who did not see deceased or his horse and carriage until the engine was upon them, evidence of prior specific instances of care and caution on his part was irrelevant, on the question of care exercised by him at the time of the accident.

   [Ed. Note.—For other cases, see Railroads, Dec. Dig. § 347.*]

2. EVIDENCE (§ 539½*)—OPINION EVIDENCE—SPEED OF TRAIN—COMPETENCY.

   In an action for death in a collision at a railroad crossing, a man and his wife, who lived over half a mile from the crossing, in a house seven or eight rods from the track, were permitted to testify as to the speed of the train. The husband testified that he had heard trains passing all the years he had lived there, and had observed how fast trains and engines were running there at certain times. The wife stated that she had lived there 22 years, had observed trains and engines passing her house, and was able to express an opinion as to how fast the train was running; but there was no proof that either had made any tests to judge of the speed of trains. They testified that they did not see the engine that struck decedent, but heard it as they were preparing for bed. *Held* that, while they showed sufficient qualifications to say that the engine was going fast or slow, they were not qualified to testify that it was going a mile a minute when it ran over the crossing.

   [Ed. Note.—For other cases, see Evidence, Dec. Dig. § 539½.*]

Appeal from Trial Term, Brown County.

Action by Horace J. Parsons, as administrator of the estate of Samuel S. Parsons, deceased, against the Syracuse, Binghamton & New York Railroad Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff's intestate was killed by being struck by an engine running without a train on the evening of October 10, 1906, while driving a single horse and carriage over a highway crossing the defendant's railroad. The deceased's wife, who was riding with him, was killed at the same time, so that there is no eyewitness of the accident except the defendant's engineer, who did not see the deceased or the horse and carriage until he was upon them; the horse having crossed the entire track and escaped without injury before the impact between the engine and the carriage. The claim of the plaintiff is that the headlight was not lighted, that the bell was not rung, nor the whistle blown, and that the engine was proceeding at the rate of about a mile a minute, although the evidence on all these points was conflicting. It was a dark, misty, and rainy night. The plaintiff had a verdict, and the defendant appeals.

Argued before SMITH, P. J., and CHESTER, KELLOGG, SEW-ELL, and COCHRANE, JJ.

Reynolds, Stanchfield & Collin (Halsey Sayles, of counsel), for appellant.

R. E. Courtney and Robert S. Parsons, for respondent.

CHESTER, J. In order to maintain his case, the plaintiff was permitted to prove, under the objection and exception of the defendant, that on 10 or 11 previous occasions the plaintiff's intestate, when driving over this same crossing, had stopped and looked up and down the track, or had used other precautions to guard against approaching trains. One witness was permitted to testify, under like objection and exception, that he had seen the deceased, on approaching this crossing on previous occasions stop and look up and down; that he did not see him very often, but occasionally, perhaps twice a week for about a year. This evidence all related to specific instances prior to the time of the accident, and had no relation whatever to the degree of care exercised at the time of the accident. The purpose of the evidence in relation to these specific instances undoubtedly was to show a habit of carefulness on the part of the deceased, as tending to show that he was prudent and careful upon the occasion when he was killed.

The only question presented for determination on this branch of the case is whether evidence of specific instances of care prior to the accident was competent on the question of care at the time of the accident. A man who is careful on one occasion may be careless on another. The circumstances at one time may be such as to induce prudence while they might not at another time. But the worst feature of this class of evidence is that it presents issues for trial not tendered by the pleadings, and which the opposing party is not prepared to meet. If this evidence was competent for the plaintiff, it would be just as competent for the defendant to prove that on prior occasions the plaintiff's intestate had been careless; that also on other nights, when this engineer ran his engine over this crossing, he had run it slowly; that he had his headlight burning; that he rang his bell, and blew his whistle; and that he had been seen many times on prior occasions to observe all these precautions. It would also be competent for the plaintiff to dispute such testimony, and to show that on prior occasions he had been careless. Thus the issues would be largely multi-

plied, and no party going to trial would know in advance what he would have to meet.

The pressure upon our courts is so great, arising very largely from the multiplication of actions for negligence, that a reasonably prompt dispatch of business could not be had if they were required to determine issues of this character not presented by the pleadings. It would seem, therefore, that good reasons exist for not supporting the admissibility of such evidence. So far as I can learn, the question has never been determined by any of the courts of this state. The fact that it has not been, in the light of the vast number of decisions in our Reports and the extended experience of our courts in dealing with negligence actions, is some indication that the profession and the courts generally have regarded evidence of that character as incompetent and immaterial. Yet it appears that in two states, at least, New Hampshire and Kansas, such evidence has been sanctioned. Davis v. Railroad Co., 68 N. H. 247, 44 Atl. 388; Missouri Pac. Ry. Co. v. Moffatt, 60 Kan. 113, 55 Pac. 837, 72 Am. St. Rep. 343.

The case of Pruey v. N. Y. Central & H. R. R. Co., 41 App. Div. 158, 58 N. Y. Supp. 797, affirmed 166 N. Y. 616, 59 N. E. 1129, cited by the respondent does not aid his contention. The most that can be said of that case, so far as it has a bearing on the admissibility of evidence, is that the court there received proof that the deceased was familiar with the surroundings at the crossing, and that the absence of contributory negligence may be established by proof of facts and circumstances from which it may be inferred that the deceased was not at fault.

Many cases are cited in the briefs of counsel where courts have received evidence of the general character and habits of the deceased for carefulness, and many others where they have refused to receive such evidence. These need not be referred to, as the question we have to determine is not as to the competency of proof of the habits of the deceased for carefulness, but as to the competency of evidence of his care or caution on prior specific occasions. While the doctrine contended for by the plaintiff has been maintained in some jurisdictions, as above indicated, it has very generally been repudiated.

In Baker v. Irish, 172 Pa. 528, 33 Atl. 558, which was an action to recover damages for personal injuries, where the defense of contributory negligence was relied on, it was held that evidence that on previous occasions the plaintiff was guilty of an act similar to the alleged act of contributory negligence was inadmissible.

In Robinson v. F. & W. R. R. Co., 7 Gray (Mass.) 92, it was held that evidence of specific acts of negligence and carelessness on the part of the engineer in running his train on other occasions than the one in question was incompetent, as it would only lead to collateral inquiries, and so distract and mislead the jury from the true issue before them, and it was there said:

"Because a man was careless or negligent of his duty in one or two specific instances, it does not follow that he was so at another time and under different circumstances."

In P. & P. U. Railroad Co. v. Clayberg, 107 Ill. 644, which was an action brought by an adminstrator against the defendant for negli-

gently causing the death of his intestate, the defendant, in order to show that the deceased was not observing due care at the time he was killed, asked a witness to state if he ever saw him get on or attempt to get on trains, and counsel stated that he expected to prove that the deceased was in the habit of jumping on trains, and the evidence was held inadmissible, as its effect was clearly to raise a collateral and immaterial issue. The court there said:

"If such evidence is admissible to prove negligence on the part of the plaintiff's intestate, then the same character of evidence must be admissible to prove negligence on the part of the defendant, which has been condemned by the entire weight of judicial authority" (citing numerous authorities).

In Dalton v. C., R. I. & P. R. R. Co., 114 Iowa, 257, 86 N. W. 272, which was an action for the killing of a person at a railroad crossing, where it was claimed in defense that he was asleep in his buggy when he drove on the track, it was held error to admit evidence of isolated instances of his being found asleep in his buggy.

In Connors v. Morton, 160 Mass. 333, 35 N. E. 860, it was said:

"It has often been held that proof of prior acts of negligence is not evidence that the act in question was negligent, any more than proof of prior acts of care in regard to similar matters is evidence that the act in question was done carefully. If such evidence were to be received, it might be necessary to investigate the conduct of the actor in every act of his life, and to draw inferences from acts similar and dissimilar showing every degree of care or negligence."

In Louisville & N. R. Co. v. Summers, 125 Fed. 719, 60 C. C. A. 487, evidence that the decedent on prior occasions had stopped and looked and listened before crossing the railroad was held to have been irrelevant and improperly received.

In Eppendorf v. B., C. & N. R. R. Co., 69 N. Y. 195, 25 Am. Rep. 171, which was a case where the plaintiff was injured while attempting to get on a moving car, the court said:

"The sole question to be determined here, so far as relates to plaintiff's alleged contributory negligence, was the character of the plaintiff's acts under the circumstances existing at the time; and what he may have done at some other time, under other circumstances, could have no bearing on that question."

In Wooster v. Broadway & Seventh Ave. R. R. Co., 72 Hun, 197, 25 N. Y. Supp. 378, the court said:

"It has been many times held that it is not competent for a plaintiff to give evidence that the person by whom the alleged negligent act was committed had previously committed similar acts, or that he was generally negligent or unskillful."

It is true that some of the cases cited, where evidence of this character has been condemned, were not cases where there was no surviving eyewitness of the accident; and, as there was none here, it is sought to justify the evidence in this case because of the necessity therefor arising from that fact. In cases where there are no eyewitnesses, the rule requiring the representatives of a deceased person to show his freedom from contributory negligence has been very much relaxed. Pruey v. N. Y. C. & H. R. R. Co., 41 App. Div. 158, 58 N. Y. Supp. 797; Schafer v. Mayor, 154 N. Y. 466, 48 N. E. 749; Smith v. N. Y. C. & H. R. R. Co., 177 N. Y. 224, 69 N. E. 427. But, while

the rule has been relaxed, it has not been abrogated, and it is still essential that what little on the subject of care is required to be proven must be shown by evidence that is competent and material on that question. The relaxation of the rule does not justify the admission of incompetent evidence, because of the necessity which confronts a plaintiff.

The court also permitted a man and his wife who lived a little over a half mile from the crossing in question, in a house about seven or eight rods from the railroad tracks where they pass it, who did not see the engine, but heard it as they were preparing for bed, to testify that it was running fast, and going about a mile a minute. It was objected that these witnesses were not shown competent to speak. It may be that a person could qualify himself to speak with some degree of accuracy as to the speed of a train by the sense of sound, and the courts have gone a great ways in allowing nonexperts to state whether cars were going fast or slow; but we think that neither of these witnesses were shown competent to testify to the rate of speed of the engine, or that it was going a mile a minute. While they had lived near the track for a long time, they were a half a mile or over from the crossing. All that the husband said to qualify him to speak was that he had heard trains passing there all the years that he lived there, and had observed how fast trains and engines were running there at certain times. All that the wife testified to as to her qualifications to speak was that she had lived there 22 years, during which time she had observed trains and engines passing her house, and that she was able to express an opinion as to how fast the train was running. There was no proof that either of them had ever made any tests of any kind whatever, either on or off of trains, or other moving vehicles, or with the aid of timepieces or objects, to mark distances in judging of their speed, nor that either of them had ever seen or tested the speed of a train running a mile a minute. Their testimony as to speed was necessarily a pure guess on the part of each of them, and, while they were undoubtedly qualified to say whether the engine was going fast or slow when it passed their house, the court, we think, erred in permitting them, without showing further qualifications, to say that the engine was going a mile a minute when it ran over the crossing over half a mile away.

We would hardly feel inclined to reverse this judgment for this error, as the defendant's evidence shows that the engine was going from 30 to 35 miles an hour, and the accident would probably have happened with the engine going at the lesser rate of speed, as well as with it going at the higher rate, and for that reason the error could not have been a very prejudicial one; but for the error with respect to receiving evidence of the specific prior instances of care on the part of the deceased we think the judgment must be reversed.

Judgment and order reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.